IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAVED AHMED, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>I.C. SYSTEM, INC. and KEN RAPP,<br><br>Defendants. | ) | Civil Action No. 05-944 |

MEMORANDUM

I

In this civil action, plaintiff, Javed Ahmed ("Ahmed"), asserts claims against defendant I.C. System, Inc. ("I.C. System") for (a) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692o (Count I), (b) violation of the Pennsylvania Fair Credit Extension Uniformity Act ("PaFCEUA"), 73 P.S. §§ 2270.1-2270.6 (Count II), (c) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PaUTPCPL"), 73 P.S. § 201-1 *et seq.* (Count III), (d) unjust enrichment (Count IV), (e) civil conspiracy (Count V) and (f) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968 (Count VI), and a claim against defendant Ken Rapp ("Rapp") for violation of RICO (Count VI).[1] Presently before the Court is defendants'

[1]Ahmed's complaint contains class action allegations regarding a class consisting of four sub-classes. (Complaint, ¶¶ 37-57).

motion to dismiss Ahmed's claims pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the motion will be granted.

II

In summary, Ahmed's complaint alleges the following facts:

On July 29, 2003, Ahmed was injured in an automobile accident. At the time, Ahmed was insured under an automobile insurance policy issued by Progressive Insurance which provided first party medical benefits in the amount of $5,000.00.

Ravi Kant, M.D. ("Dr. Kant") is a licensed medical practitioner. Following the July 29, 2003 automobile accident, Ahmed received medical treatment from Dr. Kant.[2] After Ahmed's first party medical benefits had been exhausted, Dr. Kant billed Ahmed for medical services rendered in the amount of $350.00. Ahmed does not have health insurance to pay for the medical services provided by Dr. Kant. However, if Ahmed had health insurance or if Ahmed was covered by some governmental health insurance program (such as Medicare or Medicaid), Dr. Kant would accept an amount significantly less than $350.00 for the medical services rendered to Ahmed following the automobile accident.

---

[2]According to the complaint, Ahmed was treated by Dr. Kant on one occasion for 20 minutes, and there was no agreement regarding Dr. Kant's charge for the treatment. (Complaint, ¶ 19).

I.C. System is a debt collection agency. Rapp is the President and Chief Executive Officer of I.C. System. Following Ahmed's failure to pay Dr. Kant for the medical services rendered in connection with the injuries sustained by Ahmed in the July 29, 2003 automobile accident, Dr. Kant retained I.C. System to collect the alleged debt. On July 20, 2004, a representative of I.C. System sent the following letter to Ahmed's counsel:

> Claim of: Ravi Kant MD
> Against: Ahmed Javed (sic)
>
> Dear Jeff Suher:
>
> You have been identified as the lawyer apparently representing Ahmed Javed (sic) in the above matter.
>
> Our client, Ravi Kant MD has referred this delinquent account to us for collection efforts. You are hereby notified that our collection experience with this account has been submitted to credit reporting agencies.
>
> Please contact me to discuss resolution of this matter. Unless you respond to this request for confirmation, I will assume you do not represent Ahmed Javed (sic) who will be contacted directly.
>
> We are a debt collector attempting to collect a debt and any information obtained will be used for that purpose.
>
> Sincerely,
>
> B. Miller
> Consumer Affairs

(Complaint, Exh. A).[3]

---

[3]The letter reflects a payment of $10.00 by Ahmed, resulting in a balance due of $340.00. (Complaint, Exh. A).

The operator of the automobile which struck Ahmed on July 29, 2003 was insured under an automobile insurance policy issued by Pennsylvania National Mutual, and Ahmed has been seeking recovery from the tortfeasor's insurer. Because Dr. Kant's charge for the medical services provided to Ahmed following the automobile accident is payable under the tortfeasor's automobile insurance policy or Ahmed's coverage for underinsured motorists' benefits which have not been exhausted, the cost containment provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law ("PaMVFRL"), 75 Pa.C.S. § 1701 *et seq.*, are applicable. As a result, Dr. Kant is not entitled to $350.00 for the medical services provided to Ahmed.[4]

Dr. Kant's charge for the medical services provided to Ahmed following the July 29, 2003 automobile accident exceed the reasonable value of such services because the amount is not Dr. Kant's usual and customary charge, *i.e.*, the amount billed to Blue Cross and HMOs. Only a small percentage of Dr. Kant's patients, *i.e.*, patients who are uninsured, are required to pay his full, undiscounted charges.

---

[4]Ahmed's complaint asserted the following claims against Dr. Kant: (a) violation of the PaFCEUA, (b) violation of the PaUTPCPL, (c) unjust enrichment, (d) civil conspiracy, (e) violation of RICO, (f) fraud, (g) negligent misrepresentation and (h) breach of contract. In response to Dr. Kant's motion to dismiss under Fed.R.Civ.P. 12(b)(6), Ahmed moved to dismiss the claims against Dr. Kant under Fed.R.Civ.P. 41(a)(2), and the motion was granted. As a result, Dr. Kant is no longer a party to this action.

Dr. Kant has a policy and practice of attempting to collect outstanding charges for medical services through collection agencies. Pursuant to that policy and practice, Ahmed has been "hounded" by I.C. System. Defendants' attempt to collect $350.00 for the medical services provided to Ahmed by Dr. Kant violates, *inter alia*, the PaMVFRL and the common law of Pennsylvania. In addition, defendants acted in a deceptive, misleading and unfair manner by reporting false information regarding Ahmed to credit bureaus.

III

A motion to dismiss for failure to state a claim tests the sufficiency of a complaint. Powell v. Ridge, 189 F.3d 387, 394 (3d Cir.1999). In deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true the facts pleaded in the complaint and any reasonable inferences derived from those facts. Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). In addition, the court is to construe the complaint in the light most favorable to the plaintiff. Weston v. Pennsylvania, 251 F.3d 420, 425 (3d Cir.2001). However, the court is not required to accept as true legal conclusions or unwarranted factual inferences. Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co., 113 F.3d 405, 417 (3d Cir.1997).

IV

In response to defendants' motion to dismiss his complaint for failure to state claims upon which relief may be granted, Ahmed agrees to the dismissal of Counts II through VI of the complaint, indicating that he desires to proceed solely against I.C. System on Count I which alleges violations of the FDCPA. (Brief in Opp., p. 3). Thus, defendants' motion to dismiss Counts II through VI of Ahmed's complaint, which includes the only claim asserted against Rapp, will be granted.

Turning to Ahmed's sole remaining claim, the FDCPA provides a remedy for consumers who have been subjected to abusive, deceptive or unfair debt collection practices by debt collectors. *See* Pollice v. National Tax Funding, L.P., 225 F.3d 379, 400 (3d Cir.2000), *citing*, Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1167 (3d Cir.1987). The findings of Congress concerning debt collection practices and the purpose of the FDCPA are set forth in 15 U.S.C. § 1692 as follows:

> **§ 1692. Congressional findings and declaration of purpose**
>
> **(a) Abusive practices**
>
> There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.
>
> * * *

**(e) Purposes**

> It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

Ahmed's FDCPA claims against I.C. System arise out of the July 20, 2004 letter sent by I.C. System to Ahmed's attorney. Ahmed alleges that I.C. System violated the FDCPA by (1) making false, deceptive and misleading representations in connection with the collection of a debt in violation of 15 U.S.C. § 1692e; (2) representing falsely the character, amount or legal status of the debt owed to Dr. Kant in violation of 15 U.S.C. § 1692e(2)(A); and (3) communicating false credit information to credit bureaus in violation of 15 U.S.C. § 1692e(8). (Complaint, ¶ 62).

The term "communication" is defined in the FDCPA as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). I.C. System does not dispute that its July 20, 2004 letter to Ahmed's attorney conveyed information regarding a debt. However, I.C. System contends that a letter sent to a debtor's attorney "is not a communication to a debtor giving rise to an FDCPA claim." (Brief in Supp., p. 4).

In support of the contention that its July 20, 2004 letter was not a communication that is actionable under the FDCPA, I.C. System relies heavily on the decision of the district court in Tromba v. M.R.S. Assocs., Inc., 323 F.Supp.2d 424 (E.D.N.Y.2004). In Tromba, a debtor sued a debt collector for alleged violations of the FDCPA based on documents relating to the collection of an outstanding debt which were sent by the debt collector to the debtor's attorney. The debt collector moved for judgment on the pleadings, arguing that the communication at issue was not actionable under the FDCPA because it was directed solely to the debtor's attorney. The district court granted the debt collector's motion, holding that the debtor failed to state a claim under the FDCPA because the communication was directed solely to her attorney and no threat was made regarding contact with the debtor herself. Ahmed asserts that I.C. System's reliance on Tromba is misplaced because, unlike the communication at issue in Tromba, the July 20, 2004 letter from I.C. System to his attorney contained language threatening direct contact with Ahmed.[5]

After consideration, the Court is not persuaded that the language contained in I.C. System's July 20, 2004 letter

[5]The July 20, 2004 letter of I.C. System's representative states in this regard: "Please contact me to discuss resolution of this matter. Unless you respond to this request for confirmation, I will assume you do not represent Ahmed Javed (sic) who will be contacted directly." (Complaint, Exh. A).

regarding direct contact with Ahmed in the event counsel failed to respond to the letter makes the communication actionable under the FDCPA, despite the holding of the district court in Tromba. The FDCPA specifically provides that a debt collector may communicate with a consumer in connection with the collection of a debt if the consumer's attorney fails to respond within a reasonable period of time to a communication from the debt collector. *See* 15 U.S.C. § 1692c(a)(2). Thus, in the Court's view, the language in I.C. System's July 20, 2004 letter upon which Ahmed relies in opposing I.C. System's motion to dismiss cannot be construed as a violation of the FDCPA.

Further, with respect to Ahmed's reliance on the decision of the district court in Rosario v. American Collective Counseling Services, Inc., 2001 WL 1045585 (M.D.Fla.2001), to support his FDCPA claims, the Court concludes that such reliance is misplaced. In Rosario, the plaintiff alleged, *inter alia*, various violations of the FDCPA based on two notices sent by the defendants in connection with the collection of a debt. It was undisputed that the two notices were sent to "Lydia Rosario, c/o Thomas Hiedkamp, PO Box 61169, Fort Myers, FL 33906-1169;" that Mr. Hiedkamp was the plaintiff's attorney at the time of the correspondence; and that the address was the post office box for Mr. Hiedkamp's law office. The defendants moved to dismiss the plaintiff's FDCPA claims, arguing that the notices were not

"communications" within the meaning of the FDCPA because they were sent to the plaintiff's attorney, rather than to the plaintiff herself. In rejecting this argument, the district court stated:

* * *

> A "communication" under the statute is defined broadly: "The term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Additionally, a debt collector who knows that the consumer is represented in the matter by an attorney is generally obligated to communicate with the consumer only through the attorney. 15 U.S.C. § 1692c(a)(2). In such situations, a notice to counsel satisfies the requirement that notice be sent to the consumer. Chaudhry v. Gallerizzo, 174 F.3d 394, 407 (4th Cir.1999), *cert. denied*, 528 U.S. 891 (1999). It would not seem to further the purpose of the Act to preclude a claim for allegedly actionable communications simply because they were directed to the plaintiff through an attorney's office in situations where the statute required communication only through counsel. The Court concludes that the statute is implicated at least in situations such as this, where the notices are sent to plaintiff, albeit at her attorney's address, and their text is plainly addressed to plaintiff and not to her attorney. Under these circumstances, the notices qualify as a communication to a consumer under the Fair Debt Collection Practices Act.

* * *

Clearly, the notices at issue in Rosario are distinguishable from I.C. System's July 20, 2004 letter, which was not directed to Ahmed in care of his attorney and did not contain text plainly addressed to Ahmed.

Finally, regarding Ahmed's claim that I.C. System violated the FDCPA by communicating false credit information to credit bureaus, the Court agrees with I.C. System that this claim also fails to state a claim upon which relief may be granted. Section 1692e(8) of the FDCPA prohibits "[c]ommunicating or threatening to communicate to any person credit information **which is known or which should be known to be false**, including the failure to communicate that a disputed debt is disputed." (Emphasis added). As noted by I.C. System, there is no allegation in the complaint that either Ahmed or his attorney notified I.C. System prior to filing this lawsuit that the debt which Dr. Kant was seeking to collect was disputed, and, even accepting as true for purposes of the motion to dismiss the allegation that Dr. Kant's charge for the medical services provided to Ahmed violated the PaMVFRL, there are no allegations in Ahmed's complaint giving rise to a reasonable inference that I.C. System knew or should have known of the violation. (Reply Brief, pp. 2-3). As I.C. System further notes, Dr. Kant's alleged unlawful action cannot be imputed to it, *see, e.g.*, Randolph v. IMPS, Inc., 368 F.3d 726, 729 (7th Cir.2004) (Collection agency's letter to debtor who was represented by counsel did not violate FDCPA, since collection agency did not know debtor was represented by counsel. Even if creditor's files contained information that debtor was represented, creditor's

knowledge was not imputed to collection agency.), and the FDCPA does not require debt collectors to conduct independent investigations of debts referred for collection, *see, e.g.*, Smith v. Transworld Systems, Inc., 953 F.2d 1025, 1032 (6th Cir.1992) (District court correctly determined that FDCPA does not require independent investigation of debt referred for collection.), and Ducrest v. Alco Collections, Inc., 931 F.Supp. 459, 462 (M.D.La. 1996)(Debt collector should be able to rely on representation and implied warranty from its client that amount was due under either lease or the law. FDCPA does not require independent investigation of information provided by clients when a debt collector tries to collect a debt.). (Reply Brief, pp. 3-4).

Based on the foregoing, defendants' motion to dismiss will be granted.

Date: December 20, 2005

William L. Standish
William L. Standish
United States District Judge